UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUD SMOOT, | ) | Case No. 5:18CV0744 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |

Plaintiff Jud Smoot ("Smoot" or "claimant") has challenged the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

I. PROCEDURAL HISTORY

On April 21, 2015, Smoot filed an application for a period of disability and DIB, alleging disability beginning June 1, 2009. (R. 11, Transcript ("tr."), at 12, 314-315, 336-345.) Smoot's application was denied initially and upon reconsideration. *Id.* at 227-236, 237-247, 248-250.

Thereafter, Smoot filed a request for a hearing before an administrative law judge ("ALJ").  *Id.* at 261-262.

The ALJ held a hearing on March 16, 2017.  (R. 11, tr., at 182-226.)  Claimant appeared at the hearing, was represented by counsel, and testified.  *Id.* at 184, 193-219.  A vocational expert ("VE") attended the hearing and provided testimony.  *Id.* at 184, 220-225.  On June 14, 2017, the ALJ issued her decision and concluded Smoot was not disabled.  *Id.* at 12-21.  The Appeals Council denied Smoot's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-4.

On April 2, 2018, Smoot filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  Smoot contends that the ALJ erred in evaluating the opinion from his treating physician thereby rendering deficient the ALJ's Residual Functional Capacity determination.  (R. 12, PageID #: 1211.)

## II.  PERSONAL BACKGROUND INFORMATION

Smoot was born on June 16, 1966, and was 42 years old on the alleged disability onset date.  (R. 11, tr., at 193, 314, 336.)  He has a high school education and is able to communicate in English.  (R. 11, tr., at 195, 339, 341.)  Smoot had past work as superintendent in construction and chrome plater.  (R. 11, tr., at 220-221.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Smoot's brief alleging error by the ALJ.

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

As noted earlier, Smoot applied for DIB benefits on April 21, 2015, alleging disability beginning June 1, 2009. (R. 11, tr., at 12, 314-315.) He stated that the physical conditions that limited his ability to work were: "knee surgery, knee replacement needed, lower back, bone spurs, shoulder surgeries, left ankle, arthritis." *Id.* at 340.

Smoot suffered left knee pain and swelling, due to a fall off a ladder in 2009. (R. 11, tr., at 514.) On August 2, 2010, Smoot had an MRI of his left knee that showed mild chondromalacia, small joint effusion, but no evidence of a meniscal or ligamentous tear. *Id.*

During a November 24, 2010 appointment with Jeffrey Dulik, D.O., Smoot complained about sharp pain and a popping feeling in his left knee that kept him home from work. (R. 11, tr., at 522.) Smoot also reported back pain, joint pain, and stiffness in his joints. *Id.* Dr. Dulik had x-rays of the knee taken, which showed no fracture, subluxation or dislocation. *Id.* at 523. Dr. Dulik assessed peripheral enthesopathies and allied syndromes; patellar tendinitis; chondromalacia of patella; left knee pain, with possible adhesion peripatellar; and synovitis of the left knee. *Id.* at 523-524. The doctor refilled prescriptions for Flexeril and Ultram. *Id.* at 524. Dr. Dulik explained that Smoot's pain was due to scar tissue that had formed on the synovium, and that "he needs to work through this in therapy." *Id.* The doctor administered a cortisone injection to help with the inflammation in the knee. *Id.*

On May 4, 2011, Smoot saw Dr. Dulik and complained of constant left knee pain. (R. 11, tr., at 1018.) He reported taking Vicodin for the pain, and noted that he had sought a second opinion from Dr. Andrish in March 2011, who told him he was not a candidate for knee surgery and recommended pain management and a knee brace. *Id.* Dr. Dulik noted that Smoot had arthroscopic knee surgery (chondroplasty) in October 2010. *Id.* at 1019. Dr. Dulik's assessment included peripheral enthesopathies and allied syndromes; patellar tendinitis;

chondromalacia of patella; left knee pain, with possible adhesion peripatellar; and synovitis of the left knee. *Id.* The doctor's treatment plan included home exercise, a patellar stabilizer brace, vocational rehabilitation, and he prescribed Vicodin. *Id.* at 1019-1020. He referred Smoot to Michael Rivera, M.D for pain management.2 *Id.* at 1020.

Smoot saw Dr. Rivera on May 9, 2011, and reported sharp pain in his left knee, qualitatively moderate as six on a ten-point scale. (R. 11, tr., at 1021-1024.) Dr. Rivera noted that Smoot's functional impairment was moderate; when pain is present, "it interferes only with some daily activities." *Id.* Smoot reported the pain is present constantly, and interferes with his sleep. *Id.*

Smoot reported to Dr. Rivera that the pain originated from a fall off a ladder at work on June 1, 2009, and noted he had a worker's compensation case. (R. 11, tr., at 1021.) The doctor clarified that he is a pain management physician, not an orthopedist or spine surgeon. *Id.* Dr. Rivera noted the October 2010 surgery; that Smoot denied any radiating pain, numbness, or tingling; and that the knee is slightly swollen. *Id.* Smoot identified aggravating factors as sitting down from standing position, standing up from sitting, standing or walking for a while, and walking up and down stair or inclines. *Id.* In the past, Smoot had been treated with Percocet, Darvocet, and Tramadol for the pain, and was currently treated with Vicodin. *Id.* Dr. Rivera noted a mild to moderate antalgic gait. *Id.* at 1023. The doctor assessed peripheral enthesopathies and allied syndromes; patellar tendinitis; and torn medial cartilage or meniscus of the left knee. *Id.* The doctor prescribed Pennsaid, along with Vicodin. *Id.*

---

2 The doctor's name appears in the record as Dr. Rivera-Weiss and as Dr. Rivera. *Compare* R. 11, tr., at 615, 1021, *with id.*, at 890, 1020. The doctor's handwritten signature appears as Dr. Rivera, and the court will follow suit. *Id.* at 890.

During a September 6, 2012 follow-up visit with Dr. Rivera, Smoot reported continued left knee pain, with no change, as well as pain in his lower back and both shoulders. (R. 11, tr., at 1069.) Dr. Rivera noted: "Patient reports medication moderately reduces pain level. Patient's pain level with medication is reported as 3-4 on a 10 point scale. Patient's pain level without medication is 10 on a 10 point scale." *Id.* Smoot also reported back pain, joint pain, and joint stiffness. *Id.* his medications included Celebrex, Flexeril, Norco, and Pennsaid. *Id.* The only muscoloskeletal notes concerned the left knee and lower leg: Dr. Rivera noted trace swelling of the left knee, with active range of motion producing pain with extension, and moderate pain with full extension. *Id.* at 1070. Motor examination showed full and symmetrical muscle strength, tone and size throughout his arms and legs; sensory examination was intact and symmetrical in his arms and legs; and deep tendon reflexes were normal and symmetrical. *Id.* The doctor assessed current problems as internal derangement of the knee: chondromalacia of patella, and left knee pain. *Id.* at 1070. Dr. Rivera changed his medications to 600mg ibuprofen, Lortab, and Flexeril, and discontinued Celebrex, Norco, and Pennsaid. *Id.* at 1071. The doctor's treatment plan continued home exercise and medication; and he noted that the medications improve Smoot's function and quality of life. *Id.*

X-rays were taken of Smoot's lumbar spine, hands, and left knee on December 18, 2014. (R. 11, tr., at 659-664.) The lumbar x-ray showed limited excursion with no abnormal subluxation, and osteophyte formation at L4 and L5. *Id.* at 659. The knee x-ray showed no acute abnormalities: the osseous structures were intact, no acute fractures were seen, and no joint effusion was identified. *Id.* at 661. The x-rays of the hands showed no acute abnormalities: the osseous structures were intact, no acute fractures were seen, and no acute osseous erosions were identified. *Id.* at 663. There was a remote deformity at the distal aspect of the fifth

metacarpal of the right hand.  *Id.*   There were mild degenerative changes involving the carpal-first metacarpal joints in both hands.  *Id.*

### A.   Opinion Evidence

On initial review, state agency physician Lynne Torello, M.D., completed a physical residual functional capacity assessment on June 14, 2015.  (R. 11, tr., at 232-233.)  Dr. Torello opined that Smoot was limited to lifting and carrying twenty pounds occasionally, and ten pounds frequently.  *Id.* at 232.  Smoot was capable of standing, walking, or sitting for about six hours of an eight-hour workday.  *Id.*   The doctor opined that Smoot had unlimited ability to push or pull, other than the limits stated for lifting and carrying.  *Id.* Smoot could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds.  *Id.*   He could frequently stoop or balance, and occasionally kneel, crouch, or crawl.  *Id.* at 232-233.   The limitation on ladders, ropes or scaffolds was due to shoulder and knee problems.  *Id.* at 233.   Dr. Torello limited Smoot to occasional overhead reaching with his right arm, and found no need for visual, communicative or environment restrictions.  *Id.*

On reconsideration, state agency physician Michael Delphia, M.D., completed a physical RFC assessment on August 26, 2015.  (R. 11, tr., at 242-243.)  Dr. Delphia adopted the same exertional limitations that Dr. Torello assessed, with the exception that Dr. Delphia limited Smoot to frequent pushing and pulling with the right arm.  *Id.* at 242.  Dr. Delphia assessed the same postural and manipulative limitations as did Dr. Torello.  *Id.* at 242-243.   Dr. Delphia also found no need for visual, communicative, or environmental restrictions.  *Id.* at 243.

Treating physician Dr. Rivera provided a Medical Source Statement of Ability to do Work-Related Activities (Physical), on October 5, 2015.  (R. 11, tr., at 885-890.)  Dr. Rivera opined that Smoot can lift and carry up to ten pounds continuously, and can occasionally lift and

carry up to twenty pounds.  *Id.* at 885.  His assessment was based on limitations from chronic pain.  *Id.*

Dr. Rivera opined that Smoot can sit for four hours at one time, without interruption, for a total of four hours in an 8-hour workday.  (R. 11, tr., at 886.)  The doctor also indicated Smoot can stand for three hours at one time, without interruption, for a total of three hours in an 8-hour workday.  *Id.*  Smoot can walk one hour at one time, without interruption, for a total of one hour in an 8-hour workday.  *Id.*  Dr. Rivera assessed that Smoot can walk two to three blocks without the use of a cane, but the use of a cane is medically necessary for walking longer distances.  *Id.*  The doctor opined Smoot cannot use his free hand to carry small objects while using a cane.  *Id.*  Dr. Rivera's limitations on standing and walking referenced the December 2014 lumbar x-rays that showed bone spurs at L4 and L5, and the August 2010 left knee MRI that showed chondromalacia.  *Id.*

Dr. Rivera opined that Smoot was limited in the use of his hands.  (R. 11, tr., at 887.)  Smoot can never reach overhead with his right hand, can only occasionally reach otherwise with that hand, and can occasionally reach with his left hand.  *Id.* He can use both hands frequently to handle, finger, and push or pull.  *Id.*  The limitations on the use of his hands and arms referenced the December 2014 x-rays, and May 2011 and May 2015 MRIs, which showed acute tendinosis in the right shoulder.  *Id.*  Dr. Rivera indicated that Smoot can occasionally use either foot to operate foot controls.  *Id.*

Dr. Rivera opined that Smoot can never climb stairs, ramps, ladders, or scaffolds, and can never kneel, crouch, or crawl.  (R. 11, tr., at 888.)  The claimant can occasionally balance or stoop.  *Id.*  Dr. Rivera provided medical findings that supported these postural limitations.  *Id.* The doctor indicated that Smoot can never be exposed to unprotected heights; dusts, odors,

fumes, and other pulmonary irritants; extreme cold; or vibrations. *Id.* at 889. Smoot can occasionally be exposed to moving mechanical parts, humidity and wetness, and extreme heat; and he required a quiet environment. *Id.* Dr. Rivera did not provide medical or clinical findings to support these environmental limitations. *Id.*

Dr. Rivera opined that Smoot cannot perform activities like shopping, walking a block at a reasonable pace on rough or uneven surfaces, using standard public transportation, and climbing a few steps at a reasonable pace with the use of a single hand rail. (R. 11, tr., at 890.) The doctor assessed that, on average, Smoot's impairments or treatment would cause him to be absent from work more than four days per month. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her June 14, 2017, decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 1, 2009, through his date last insured of December 31, 2014 (20 C.F.R. 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity, lumbar spine degenerative disc disease, shoulder tendinitis – status post arthroscopic SLAP and posterior labral repairs/disorders of the bursae and tendons in the shoulder region-unspecified, and knee degenerative joint disease/osteoarthritis of the lower extremity (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with occasional lifting and/or

carrying, including upward pulling, up to 20 pounds; frequent lifting and/or carrying, including upward pulling, up to 10 pounds; standing and/or walking, with normal breaks for a total of 6 hours in an 8-hour workday; sitting, with normal breaks, for about 6 hours in an 8-hour workday; pushing and/or pulling, including the operation of hand/foot controls, is unlimited, other than as shown for lifting and/or carrying, except for frequent use of the right upper extremity for pushing and pulling; occasionally climbing ramps and stairs, kneeling, crouching, or crawling; frequently balancing or stooping; never climbing ladders, ropes, or scaffolds; occasional overhead reaching with the right upper extremity; and no visual, environmental, or communicative limitations.

6. Through the date last insured, the claimant was capable of performing past relevant work as a superintendent - construction and chrome plater. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 C.F.R. 404.1520(f)).

(R. 11, tr., at 14, 15, 16, 20, 21.)

## V. DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Comm'r of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful

activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or

substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Smoot contends that the ALJ erred when assigning "little weight" to the opinion from his treating physician, Dr. Rivera, thereby rendering deficient the ALJ's Residual Functional Capacity (RFC) finding that Smoot retained the RFC to perform a range of light unskilled work activity. (R. 12, PageID #: 1211, 1222.) Because the ALJ did not err when evaluating the treating provider's opinion, Smoot's assertion—that the ALJ's RFC finding was not supported by substantial evidence—lacks merit. *Id.* at 1219.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).[3] In other words,

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017. For the sake of consistency, the court continues to cite the language

"[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.); 20 CFR 404.1527(c)(2) (2017) ("good reasons"); 20 CFR 416.927(c)(2) (2017).

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb

---

from the former regulations that were in effect at the time of the ALJ's decision.

to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Here, the ALJ determined that "no controlling weight" would be given to Dr. Rivera's opinion. (R. 11, tr., at 19.) After summarizing Dr. Rivera's medical statement (*see generally* R. 11, tr., at 19, 885-890), the ALJ stated:

> These opinions are inconsistent with the medical record prior to the date last insured, including the above noted largely unremarkable diagnostic test results and clinical findings. In addition, this assessment was completed almost one year after the date last insured, and although Dr. Rivera stated that his limitations were for the year 2014, it is unclear if he considered any post-date last insured evidence (in fact Dr. Rivera-Weiss mentioned the need for the use of a cane, but there is no mention of the need for an assistive device in earlier pre-date last insured records, and the claimant testified that he only used a cane every once in a while during the relevant period). Furthermore, Dr. Rivera-Weiss concluded that the claimant can sit for four hours, stand for three hours, and walk for one hour total in an 8-hour workday, but he could also perform the same amount of these activities at one time, without explaining this apparent discrepancy/ possible mistake. Finally, Dr. Rivera-Weiss had a very limited treatment history with the claimant from around 2012 to the date last insured of December 2014 (the claimant's representative points to indirect evidence of treatment by Dr. Rivera-

>           Weiss in Exhibit 15E, but cannot show direct evidence or extensive treatment
>           during this time). Therefore, the undersigned gives little weight to this opinion.

(R. 11, tr., at 19-20, internal citations omitted.)

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner,* No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Although the ALJ discounted Dr. Rivera's opinion, in part, because it was inconsistent with and not supported by the clinical findings that were largely unremarkable, Smoot contends the ALJ erred and he characterizes the clinical examination findings as "sufficiently positive to warrant narcotic pain medications, permanent work restrictions, a brace, and a prediction that plaintiff would need a total knee replacement." (R. 12, PageID #: 1222.) The Commissioner counters that "[e]vidence of conservative treatment (i.e. medications, injections, physical therapy, and a knee brace) during the relevant time period does not satisfy Plaintiff's burden to show that his functional limitations were greater than those assigned by the ALJ, nor does it show that they were consistent with the extreme limitations opinioned by Dr. Rivera-Weiss." (R. 13, PageID #: 1230.) As noted above, reviewing courts do not try the case *de novo* or resolve alleged conflicts in the evidence. *DeLong,* 748 F.3d at 726; *Wright,* 321 F.3d at 614;

*Garner*, 745 F.2d at 387.

Smoot also objects to the ALJ's decision identifying deficiencies in the doctor's opinion such as whether it considered evidence after the date last insured; the "apparent discrepancy/ possible mistake" between the doctor's opinions reading sit, stand and walk limitations; and the fact that the "Dr. Rivera-Weiss had a very limited treatment history with the claimant from around 2012 to the date last insured of December 2014." (R. 12, PageID #: 1221-23; R. 11, tr., at 19-20.) Plaintiff asserts the ALJ could have contacted the doctor for clarification of any ambiguities in the evidence (R. 12, PageID #: 1222), to which the Commissioner responds that the ALJ left the record open after the hearing but Smoot did not supplement the record with additional records from Dr. Rivera. (R. 13, PageID#: 1232.)[4]

The ALJ recognized that Dr. Rivera was a treating physician, but declined to give his opinion controlling weight. (R. 11, tr., at 19.) The ALJ's decision demonstrates, in giving weight to Dr. Rivera's opinion, that she considered the treatment relationship—specifically noting Dr. Rivera as a "treating source," (R. 11, tr., at 19) —and recognized the length, the nature and extent of the treatment relationship when citing treatment records from 2011 through December 2014. *See id.; see generally* 20 C.F.R. § 404.1527(c). Further, the ALJ determined,

---

4 Smoot acknowledges that the record does not contain treatment record with Dr, Rivera in 2013 and nearly all of 2014 (R. 12, PageID#: 1221), but he indicates that the doctor did treat him both prior to and subsequent to that period, and "would have well-positioned to offer an opinion" as to his functional abilities dating back to 2014. *Id.* at 1223. Smoot further asserts that Dr. Rivera's opinion that he would need a cane for walking longer distances was consistent with his hearing testimony that a cane was only occasionally needed, for longer distances. *Id.* The court agrees with the Commissioner's assertion, however, that the "propositions that Plaintiff could walk for one hour without rest, but that he required the use of a cane to walk two blocks, along with plaintiff's testimony that he used a cane only every once in a while, is…internally inconsistent and was properly considered by the ALJ in weighing the opinion." (R. 13, PageID#: 1231.)

for example, that Dr. Rivera's opinion: was inconsistent with the medical record, which included "largely unremarkable" diagnostic and examination records; was internally inconsistent, which the ALJ noted when identifying the "discrepancy/possible mistake" between the doctor's opinion regarding Smoot's ability to sit, stand and walk "in an 8-hour day" and all at "one time"; and was based on a substantial lack of treatment in 2013 and 2014 (R. 11, tr., at 18-20.)

The ALJ considered proper factors in determining how much weight to give to Dr. Rivera's opinions. *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376; 20 C.F.R. §404.1527(c). The court finds that the ALJ provided good reasons, supported by evidence in the case record, that are sufficiently specific to make clear to subsequent reviewers the reasons for the weight assigned. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. Although Smoot reviews the evidence that he believes compels a different conclusion than that reached by the ALJ (R. 12, PageID #: 1221-1223), the ALJ's assessment of Dr. Rivera's opinion follows a lengthy discussion of the medical evidence of record (R. 11, tr., at 17-19), and is supported by substantial evidence. Moreover, in the ALJ's discussion of the medical evidence, the ALJ found that the nature and degree of functional limitations alleged by the claimant were not supported by the medical record, discussing the "largely unremarkable" diagnostic test results and physical examinations. *Id.* at 18.

The ALJ specifically addressed the 2010 MRI of the left knee, and the 2014 lumbar x-rays (cited in Dr. Rivera's medical statement):

. . . an MRI of the left knee from 2010 showed only "mild" chondromalacia,

> "small" joint effusion, and no evidence of a meniscal or ligamentous tear, and x-
> rays of the lumbar spine completed in 2014 indicated that there was limited
> excursion with no abnormal subluxation identified, and an osteophyte formation
> at the L4 and L5.

(R. 11, tr., at 18-19, citations omitted.) The ALJ concluded that there were no indications in the medical record prior to the date last insured that would support limitations beyond the performance of light work with the non-exertional restrictions of the decision's RFC. *Id.* at 19.[5]

After fully considering the arguments of both parties (R. 12 and 13), and the evidence in the record, the court finds that the ALJ provided good reasons for not providing controlling weight to the opinion of Dr. Rivera. *See, e.g.*, *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ determined that the doctor's RFC assessment was inconsistent with other substantial evidence in the medical record, and identified the evidence on which that determination was based. (R. 11, tr., at 19-20.) *See generally* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 376; *Hall*, 2005 WL 2139890, at *5.) The ALJ's good reasons for the weight assigned to the doctor's opinion were supported by substantial evidence in the record, and are sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight. *See Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Hall*, 2005 WL 2139890, at *5; *Winning*, 661 F.Supp.2d at 818-819.

The court finds that the ALJ's decision concerning the weight given to Dr. Rivera's

---

5 The ALJ's decision is also supported by opinions from State agency consultants. The decisions gave "significant weight" "to the State agency medical consultants' physical assessments, who limited the claimant to a range of light level work." (R. 11, PageID#: 19, citing Exs. lA at Tr. 227-235; 3A at Tr. 237-246). The ALJ concluded: "These opinions are generally consistent with the above residual functional capacity, as well as the claimant's medical records and treatment history. As noted, diagnostic and clinical findings were largely unremarkable, and the claimant saw significant improvement following his knee surgery. Thus, the restriction to light level work with the non-exertional restrictions noted above fully accounts for the claimant's physical impairments prior to the date last insured." *Id.*

opinion is supported by good reasons and by substantial evidence in the record.

## VIII.  CONCLUSION

The final decision of the Commissioner is affirmed, for the reasons set forth herein.


                                            s/ *David A. Ruiz*  
                                              David A. Ruiz  
                                              United States Magistrate Judge

Date: September 10, 2019